**Opinion issued July 16, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-12-00438-CV

_____

**SCOTT WONDERS, Appellant**

**V.**

**WILLIAM E. JOHNSON, INDIVIDUALLY, JACOB S. MATTIS, INDIVIDUALLY, AND THE MATTHEWS LAW FIRM, PLLC D/B/A MATTHEWS, LAWSON & JOHNSON PLLC, Appellees**

---

**On Appeal from the 152nd District Court**
**Harris County, Texas**
**Trial Court Cause No. 1169475**

---

## MEMORANDUM OPINION

Scott Wonders appeals from the trial court's dismissal of his legal

malpractice suit against appellees, William E. Johnson, individually, Jacob S.

Mattis, individually, and The Matthews Law Firm, PLLC d/b/a Matthews, Lawson & Johnson, PLLC. The trial court dismissed the case on motion of the defendants, who argued that because the malpractice claim was based on an alleged mishandling of a patent case, over which federal courts have exclusive jurisdiction, a state court lacked jurisdiction to hear the malpractice claim. The Supreme Court of the United States addressed this issue while this appeal was pending. *See Gunn v. Minton*, 568 U.S.___, 133 S. Ct. 1059 (2013). Following that recent precedent, we hold that a state court may exercise jurisdiction over Wonders' malpractice claims, and we reverse and remand.

**Background**

In August 2003, Wonders, a fireman with the Port Arthur Fire Department, developed an auto-cascade system, called "Compressed Air Management System" or "CAMSystem," which was designed to increase the efficiency of compressed air recharge systems to maximize recharges. The following year, in September 2004, Wonders met with Johnson, an attorney at The Matthews Law Firm, to discuss patenting the CAMSystem. In October of that year, Wonders displayed the CAMSystem at the International Association of Fire Chiefs Conference, where representatives from Scott Technologies approached Wonders to discuss his system. Several months later, after numerous telephone calls from Wonders

2

concerning the status of his patent application, Johnson sent Wonders a draft of the application. On August 11, 2005, unbeknownst to Wonders, Scott Technologies filed a patent application for a similar system, the Plummer Patent. The Plummer Patent was different from Wonder's patent in that it used a priority fill, rather than a back fill, to recharge the storage of compressed air. Johnson did not file Wonders' patent application until May 17, 2006.

In January 2010, Wonders discovered the existence of the Plummer Patent. He contacted The Matthews Law Firm and was informed that Johnson no longer worked at that firm but that Mattis would be taking over his case. Wonders told Mattis he wanted to challenge the issuance of the Plummer Patent. He also requested that Mattis submit a drawing along with the challenge, depicting the difference between his patent and the Plummer Patent, which had been left out of his patent application. In June 2010, Wonders learned that the Plummer Patent would not be rescinded. Wonders' patent, entitled "Method and Apparatus for Filling a Plurality of Air Breathing Tanks Used by Fireman and Scuba Divers," was issued on November 2, 2010.

On November 16, 2011, Wonders sued Johnson, Mattis, and The Matthews Law Firm for legal malpractice, alleging that their failure to timely file his patent application caused the Plummer Patent to issue. Wonders claimed that the timely

3

filing of his patent application would have caused the Plummer Patent application to be denied based on its overwhelming similarity to Wonders' patent. Wonders claimed that although his patent was ultimately issued, he has sustained damages due to the existence of the competing Plummer Patent.

After filing an answer, appellees moved the trial court to dismiss the case based on a lack of jurisdiction. Relying on *Minton v. Gunn*, 355 S.W.3d 634 (Tex. 2011), appellees argued that Texas state courts lacked jurisdiction over a legal malpractice lawsuit arising out of the handling of a patent case, because such claims implicated federal law and, accordingly, may be brought only in federal court. The trial court agreed and dismissed Wonders' lawsuit. Wonders appealed.

## Discussion

After the parties filed briefs in this case, the United States Supreme Court reversed *Minton*, holding that state courts are not deprived of subject matter jurisdiction over legal malpractice claims arising out of the handling of a patent case. *See Gunn*, 133 S. Ct. at 1068. In that case, Minton sued Gunn, his attorney in the underlying patent infringement case, in state court for legal malpractice after Minton's patent was declared invalid because Minton had leased the technology that was subject to the patent to a third party more than a year before he filed the patent application. *Id.* at 1063. Minton argued that Gunn failed to timely raise the

4

argument that lease of the technology was part of an ongoing testing and, therefore, fell within the "experimental use" exception to the "on sale" bar. *Id.* at 1062–63. The trial court granted summary judgment in favor of Gunn on the basis that Minton's patent infringement claims would have failed even if the experimental-use argument had been timely raised by Gunn because the "experimental use" exception did not apply to the leased technology. *Id.* at 1063.

In the court of appeals, Minton challenged the state court's jurisdiction, arguing that, because his legal malpractice claim was based on alleged malpractice in a patent case, federal courts had exclusive "arising under" jurisdiction under 28 U.S.C. § 1338(a). *See* 28 U.S.C. § 1338(a) ("No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents."). The court of appeals rejected this argument and found that the case did not raise a sufficiently substantial federal interest; therefore, it did not "arise under" federal law. *Gunn*, 133 S. Ct. at 1063. The Texas Supreme Court disagreed and held that "federal courts possess exclusive jurisdiction to determine Minton's state-based legal malpractice claim." *Minton*, 355 S.W.3d at 646. Therefore, the Court reversed the court of appeals' judgment and dismissed the case. *Id.* at 647. The Supreme Court of the United States granted review.

5

Relying upon *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 125 S. Ct. 2363 (2005), the Supreme Court reiterated that a case may arise under federal law if the federal issue is, "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 133 S. Ct. at 1065. In concluding that Minton's legal malpractice action did not implicate federal court jurisdiction, the Court noted that

> state legal malpractice claims based on underlying patent matters will rarely, if ever, arise under federal patent law for purposes of § 1338(a). Although such cases may necessarily raise disputed questions of patent law, those cases are by their nature unlikely to have the sort of significance for the federal system necessary to establish jurisdiction.

*Gunn*, 133 S. Ct. at 1065. The Court explained that whether a substantial federal issue existed depended, not on the importance of the issue to the parties in the immediate suit but, instead, on the importance of the issue to the federal system as a whole. *Id.* at 1066.

Here, the Court explained, Minton's claims were not significant to the federal system as a whole. The Court noted that, "[b]ecause of the backward-looking nature of a legal malpractice claim, the question is posed in a merely hypothetical sense: *If* Minton's lawyers had raised a timely experimental-use argument, would the result in the patent infringement proceeding have been

6

different?  No matter how the state courts resolve that hypothetical 'case within a case,' it will not change the real-world result of the prior federal patent litigation. Minton's patent will remain invalid."  *Id.* at 1066–67.

Moreover, the Court rejected the argument that a state court decision involving the interpretation of a patent law in the context of a malpractice suit would have any precedential effect, saying:

> [A]lthough the state courts must answer a question of patent law to resolve Minton's legal malpractice claim, their answer will have no broader effects.  It will not stand as binding precedent for any future patent claim; it will not even affect the validity of Minton's patent. Accordingly, there is no 'serious federal interest in claiming the advantages thought to be inherent in a federal forum[.]'

*Id.* at 1068.  (citations omitted).

Finally, the Court found that the fourth *Grable* factor—concerning the appropriate balance of federal and state judicial responsibilities—was also not met. The Court explained that the state's interest in regulating the legal practice and maintaining standards of competence within the profession is "especially great since lawyers are essential to the primary governmental function of administering justice, and have historically been officers of the courts."  *Id.* (quoting *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792, 95 S. Ct. 2004, 2016 (1975)).  The Court saw "no reason to suppose that Congress—in establishing exclusive federal jurisdiction over patent cases—meant to bar from state courts state legal

7

malpractice claims simply because they require resolution of a hypothetical patent issue." *Id.* Therefore, the Court held that "Section 1338(a) does not deprive the state courts of subject matter jurisdiction" to decide state legal malpractice claims based on underlying patent matters. *Id.*

Here, Wonders claims that *Gunn* controls and compels reversal. We agree. Wonders' legal malpractice claim, like Minton's, would involve the application of federal patent law. For example, to prevail under the theory he asserted below, Wonders must prove that the Plummer Patent would have been rejected had appellees filed Wonders' patent application sooner. However, as explained in *Gunn*, the mere fact that a state court may be required to apply federal law in this backward-looking context is not enough to trigger exclusive federal jurisdiction. *Gunn*, 133 S. Ct. at 1068. "[S]omething more, demonstrating that the question is significant to the federal system as a whole," and not just the parties, is required. *Id.* Where, as here, the state court's resolution of the patent issue would neither invalidate an already issued patent nor constitute binding precedent for future patent claims, that requirement is not met. *Id.*

Based on the Supreme Court's decision in *Gunn*, we conclude that Wonders' legal malpractice action does not raise a substantial federal question so as to implicate the federal court's exclusive "arising under" jurisdiction. Therefore, the

8

trial court was not deprived of subject matter jurisdiction over Wonders' legal malpractice claim and it erred by dismissing the case.

## Conclusion

We reverse the judgment of the trial court dismissing Wonders' petition for lack of jurisdiction and remand for further proceedings.



Rebeca Huddle
Justice


Panel consists of Justices Jennings, Brown, and Huddle.