State of ARIZONA, EX REL. Mark
BRNOVICH, Plaintiff,

v.

VOLKSWAGEN AG, et al., Defendants.

No. CV-16-01426-PHX-ROS

United States District Court,
D. Arizona.

Signed June 23, 2016

Evan Guy Daniels, Oramel Horace Skinner, Paul N. Watkins, Office of the Attorney General, Phoenix, AZ, David C. Wright, Richard D. McCune, McCune Wright LLP, Redlands, CA, Melissa Anne Meister, Stephen G. Larson, Steven Alan Haskins, Larson Obrien LLP, Los Angeles, CA, for Plaintiff.

Amanda Emily Heitz, Curtis James Busby, Paul G. Cereghini, Bowman & Brooke LLP, Amanda Christine Sheridan, Vaughn A. Crawford, Snell & Wilmer LLP, Phoenix, AZ, for Defendants.

## ORDER

Honorable Roslyn O. Silver, Senior United States District Judge

The State of Arizona believes Volkswagen AG and a number of related companies violated the Arizona Consumer Fraud Act in marketing diesel vehicles. Volkswagen believes there is federal jurisdiction over this explicitly state-law claim because "[f]ederal law is squarely at the heart of this Action." (Doc. 33 at 3). That is not accurate. Arizona's claim does not necessarily turn on federal law and this case must be remanded.

## BACKGROUND

In 2007, Volkswagen set a goal of becoming "the world's number one automaker" in terms of the number of vehicles sold. (Doc. 1-1 at 12). To accomplish this goal, Volkswagen needed to dramatically increase its sales in the United States. Volkswagen believed it could do so by placing special emphasis on the development and sale of what it called its "Clean Diesel" vehicles. In general, diesel engines "offer better fuel efficiency than gasoline-powered vehicles" but it is difficult for diesel engines to comply with the United States' "stringent emissions standards." (Doc. 1-1 at 12). Volkswagen believed it could develop a technological solution that would allow its diesel vehicles to pass emissions standards. Volkswagen made some progress towards such a solution but, in 2008, it determined there was an easier way: cheating.

Beginning in 2008, Volkswagen installed "defeat device software" in its Clean Diesel vehicles. That software sensed when the vehicle was undergoing emissions testing and ensured the vehicle's emissions stayed below the applicable threshold during the testing. During "normal vehicle operation," however, the software "reduced the effectiveness of the emission control systems" such that "emissions increased by a factor of 10 to 40 times above compliance levels." (Doc. 1-1 at 14). This allowed Volkswagen's vehicles to have better fuel efficiency than similar gasoline-powered cars while ostensibly passing emissions requirements. Volkswagen capitalized on the public's ignorance of the true state of things by describing its Clean Diesel vehicles as uniquely "clean," "green," and "good for the environment." (Doc. 1-1 at 20). For example, in 2009, a Volkswagen official outlined for a reporter the advantages of the Clean Diesel vehicles by comparing them to gasoline vehicles:

> [A Clean Diesel engine is] also good for the environment because it puts out 25% less greenhouse gas emissions than what a gasoline engine would. And thanks to the uniqueness of the [Clean Diesel] motor, it cuts out the particulate emissions

by 90% and the emissions of nitrous oxide are cut by 95%. So, a very very clean running engine. Clean enough to be certified in all 50 states.

(Doc. 1-1 at 20).

From 2008 to 2014, Volkswagen "inundated" consumers in Arizona with commercials regarding its Clean Diesel vehicles. Those commercials described the Clean Diesel vehicles as substantially different from older diesel engines. According to Volkswagen, older diesel engines were known as "[s]tinky, smoky, and sluggish." (Doc. 1-1 at 21). Volkswagen's Clean Diesel technology, however, meant "Diesel is no longer a dirty word" and Clean Diesel vehicles were not "your daddy's diesel." (Doc. 1-1 at 29, 21). Volkswagen also advertised that one of its Clean Diesel vehicles won "Green Car of the Year." (Doc. 1-1 at 30).

In 2014, Volkswagen's cheating scheme began to unravel. That year testing on multiple Clean Diesel vehicles indicated the vehicles were polluting much more while driven in real-world conditions than while undergoing emissions testing. (Doc. 1-1 at 15-16). When confronted with these test results, Volkswagen explained the strange results were due to "technical issues and unexpected in-use conditions." (Doc. 1-1 at 16). The following year Volkswagen conducted a recall purportedly to fix the issue but the problem remained. Eventually, in September 2015, Volkswagen "admitted to [federal and California officials] that it had designed, manufactured, and installed defeat devices in [Clean Diesel vehicles] from 2009 to 2015 for the purpose of bypassing, defeating, or rendering inoperative elements of its vehicles' emissions control systems." (Doc. 1-1 at 17). As of April 2016, Volkswagen's Clean Diesel vehicles sold between 2009 and 2015 still contained the defeat device software. (Doc. 1-1 at 20).

Based on the foregoing, the State of Arizona filed suit against Volkswagen in Maricopa County Superior Court. Arizona asserted a single claim under the Arizona Consumer Fraud Act. In recounting the precise basis for this claim, Arizona claimed Volkswagen had "engaged in deceptive and unfair business practices" by "creating and installing defeat devices in" its Clean Diesel vehicles. Arizona also claimed the "advertising, marketing, selling, and leasing" of vehicles as "Clean Diesels" violated the Consumer Fraud Act by "representing Volkswagen as a 'green' company that had a corporate objective of 'climate protection' and 'reduc[tion of] greenhouse gas emissions.'" (Doc. 1-1 at 37). On May 9, 2016, Volkswagen removed the case to federal court, arguing the state-law claim was "entirely dependent on allegations that [Volkswagen] violated federal law." (Doc. 1 at 2). Arizona now seeks remand, arguing there is no federal jurisdiction over its explicitly state-law claim.

## ANALYSIS

■■■ Volkswagen was entitled to remove this case from state court only if it qualified as a civil action "arising under the Constitution, law, or treaties of the United States." 28 U.S.C. § 1331; 28 U.S.C. § 1441. There are two ways in which "a case can 'aris[e] under' federal law" as contemplated by § 1331. *Gunn v. Minton*, —— U.S. ——, 133 S.Ct. 1059, 1064, 185 L.Ed.2d 72 (2013). First, "a case arises under federal law when federal law creates the cause of action asserted." *Id.* Volkswagen does not argue Arizona's claim was created by federal law, meaning this first possibility is not available. The second way a case can "arise under" federal law is if it involves only state-law claims but those claims fit into the "special and small category of cases" involving federal issues. *Id.* Under this second way, "federal jurisdiction over a state law claim will lie if a

federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* Failure to meet any of these four requirements means federal jurisdiction is lacking. It is this four-part test that Volkswagen asserts as justifying its removal.

 The most basic requirement of the four-part test is that federal jurisdiction will lie only when the state-law claim "necessarily" raises a federal issue. This is an absolute requirement, meaning the state-law claim *must* implicate a federal issue. It is not enough that the state-law claim might do so. The mandatory nature of this requirement has been repeatedly, and clearly, explained by the Supreme Court and the Ninth Circuit. Just last month, the Supreme Court noted that federal jurisdiction will not lie when the complaint asserts "a simple state-law action for breach of contract, in which the plaintiff alleges, for atmospheric reasons, that the defendant's conduct also violated [federal law]." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning,* —— U.S. ——, 136 S.Ct. 1562, 1568, 194 L.Ed.2d 671 (2016). Federal jurisdiction is lacking in such a scenario "because the plaintiff can get all the relief he seeks just by showing the breach of an agreement, without proving any violation of federal [law]." *Id.* at 1569.

That recent Supreme Court explanation is similar to much earlier Ninth Circuit formulations. For example, in 1996 the Ninth Circuit addressed the situation of a case that had been removed from state court involving a religious discrimination claim. *Rains v. Criterion Sys., Inc.,* 80 F.3d 339, 342 (9th Cir. 1996). The jurisdictional issue was whether that discrimination claim was necessarily asserting a claim under federal antidiscrimination law. The Ninth Circuit concluded it was not, reasoning that "[w]hen a claim can be sup-

ported by alternative and independent theories—one of which is a state law theory and one of which is a federal law theory—federal question jurisdiction does not attach because federal law is not a necessary element of the claim." *Id.* Because the discrimination claim was based on "three alternative theories," and one of those theories was purely a matter of state law, federal jurisdiction did not exist. *Id.* at 347.

An earlier Ninth Circuit case provides even more direct guidance because it involved alleged violations of generic "environmental laws." *Ultramar Am. Ltd. v. Dwelle,* 900 F.2d 1412, 1414 n.5 (9th Cir. 1990). The Ninth Circuit observed it was possible the plaintiff could prevail on these claims under state, not federal, law. And that straightforward possibility was "grounds to defeat federal question jurisdiction." *Id.* at 1414.

 In line with these cases, Volkswagen is entitled to stay in federal court only if Arizona's claim will necessarily require a decision on a federal issue. According to the complaint, Volkswagen violated the Consumer Fraud Act in the sale and marketing of its Clean Diesel vehicles. To prevail on this claim, Arizona must prove Volkswagen's statements had a "tendency and capacity to convey misleading impressions to consumers even though interpretations that would not be misleading also are possible." *Madsen v. W. Am. Mortgage Co.,* 143 Ariz. 614, 694 P.2d 1228, 1232 (1985) (quotation omitted). In Volkswagen's view, none of its statements were misleading if Arizona is unable to prove a violation of a federal law. But Volkswagen provides no coherent statement of why proof of a federal violation is a necessary element of a consumer fraud claim. And, in fact, it is not.

Arizona believes Volkswagen violated the Consumer Fraud Act by marketing its vehicles as "clean" and "green" and by

making representations regarding its vehicles in comparison to gasoline vehicles and older diesel engines. Arizona could prevail on this claim even if it were to drop all mentions of federal law, regulations, and standards from its complaint and case strategy. In fact, Arizona could prevail even if the federal law, regulations, and standards had never existed. A simple example shows why this is true. Arizona alleges Volkswagen touted its Clean Diesel vehicles as " 'clean,' 'green,' and good for the environment." (Doc. 1-1 at 20). Despite these statements, Volkswagen's vehicles were allegedly producing substantially more pollution than other comparable, but gasoline-powered, vehicles. Proving that Volkswagen's statements had the "tendency and capacity to convey misleading impressions" will not require reference to, let alone resolution of, any federal issue. *Madsen*, 694 P.2d at 1232. Rather, Arizona might prevail simply by comparing the Clean Diesel vehicles to gasoline powered vehicles and proving, in that context, Volkswagen's advertisements and statements were misleading. Because Arizona's claim will not *"necessarily* depend[ ] upon construction of a substantial question of any federal [law]," federal jurisdiction does not exist. *Ultramar*, 900 F.2d at 1414.

The conclusion that Volkswagen cannot establish federal jurisdiction for a case of the present type is in line with a decision from the District of New Jersey presenting an almost identical situation. *Lougy v. Volkswagen Grp. of Am., Inc.*, No. CV 16–1670 (JLL), 2016 WL 3067686 (D.N.J. May 19, 2016). In that case the State of New Jersey filed suit in state court alleging Volkswagen's cheating on emissions testing violated the New Jersey Air Pollution Act as well as the New Jersey Consumer Fraud Act. *Id.* at *1. The court remanded the case, concluding neither state-law claim necessarily depended on federal law. *Id.* at *3. The Western District of Washington took a similar approach in remanding another Volkswagen suit. *Nauheim v. Volkswagen Group of Am.*, CV-16-137-JCC (W.D. Wash. March 15, 2016). That court held "Volkswagen's conduct may have violated federal law" but the claims actually set forth in the complaint "depend[ed] solely upon construction of state law."[1] *Id.*

The only contrary authority Volkswagen proffers comes from the Eastern District of Kentucky. That decision, however, appears to conflate numerous issues in concluding federal jurisdiction may exist. There, the State of Kentucky filed suit in state court asserting numerous state-law claims based on allegations that Volkswagen had defrauded consumers through its marketing of Clean Diesel vehicles. In conducting a "preliminary assessment of jurisdiction," the court held there was a necessary federal issue because "the *right to relief* sought by [Kentucky] raises issues of federal law." (Doc. 33-1 at 40, 41). While it is not entirely clear what the court meant by the italicized language, that statement was immediately followed by a citation to Volkswagen's brief which stated the alleged "non-compliance with [federal] standards" was "the entire predicate for each of [Kentucky's] state-law claims."

---

1. Numerous other courts have reached the same conclusion. *See Claytor v. Volkswagen Grp. of Am., Inc.*, No. 7:16CV00197, 2016 WL 3087069 (W.D. Va. May 31, 2016) (remanding based on lack of federal jurisdiction); *Springsted v. Valenti Motors, Inc.*, No. 3:16CV214 (JBA), 2016 WL 2977235 (D. Conn. May 20, 2016) (same). Some courts, however, have concluded the issue of jurisdiction should be determined by the MDL court. *See Werner v. Eich Motor Co., Inc.*, No. CV 16–396 ADM/LIB, 2016 WL 3024053 (D. Minn. May 25, 2016). If the jurisdictional issue were close, it might be wise to allow the MDL court to resolve it. However, the issue is not close and there is no need to make Arizona wait for the ruling it is entitled to receive.

(CV-16-27-GFVT, Doc. 19 at 13). Thus, the Kentucky court seemed to believe the state-law claims would necessarily turn on federal law because the claims were entirely based on federal violations. The Kentucky court supported that conclusion, however, by invoking the separate issue of federal preemption of state-law claims. Most types of federal preemption are merely defenses to state-law claims and cannot support federal jurisdiction so the invocation of preemption principles had no obvious application. *Franchise Tax Bd. Of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 14, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). And the type of preemption that might confer federal jurisdiction—often called "complete preemption"—would have meant Volkswagen had no need to invoke the special four-part test for finding federal jurisdiction over a state-law claim. Instead, a proper complete preemption analysis would have resulted in the state-law claims simply being viewed as federal law claims. *See Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 476, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998) ("[O]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state-law claim is considered, from its inception, a federal claim, and therefore arises under federal law."). In any event, to the extent the Kentucky court concluded federal jurisdiction exists over claims such as consumer fraud, this Court disagrees.

Volkswagen's arguments in favor of federal jurisdiction represent a form of wishful thinking. According to how Volkswagen would like to read the complaint, Arizona's state-law claim will necessarily depend on federal law. If true, there would be good reason to believe this case could remain in federal court. But alas, wishing something to be true does not make it so. Volkswagen's reading of the complaint is not accurate, federal jurisdiction does not exist, and this case will be remanded.[2]

Accordingly,

**IT IS ORDERED** the motion for remand (Doc. 18) is **GRANTED**. The Clerk of Court is directed to **REMAND** this matter to Maricopa County Superior Court.

---

2. In its opposition to the motion to remand, Volkswagen claimed that if the "motion for remand is granted, [it] reserve[d] the right to file a renewed motion [to stay] on an expedited schedule in this court." (Doc. 33 at 6 n.4). By statute, remand orders are "not reviewable on appeal or otherwise." 28 U.S.C. § 1447(d). And "[t]his language has been universally construed to preclude not only appellate review but also reconsideration by the district court." *Seedman v. U.S. Dist. Court for Cent. Dist. of California*, 837 F.2d 413, 414 (9th Cir. 1988). Given that there is no other court where Volkswagen might turn to get a different ruling regarding jurisdiction in this case, there does not appear to be any basis for requesting a stay. Volkswagen may, of course, file any motion it believes appropriate but it faces an uphill battle should it choose to pursue its professed strategy.