NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0197n.06

No. 17-1401

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| TAMARA NAPPIER, as mother and next friend of T.N., a minor child, on behalf of T.N. and a class of all others similarly situated, | ) ) ) ) | **FILED**<br>Apr 16, 2018<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| RICHARD SNYDER, et al., | ) ) | COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| Defendants-Appellees, | ) ) | |
| DANIEL WYANT, et al., | ) ) | |
| Defendants-Appellants. | ) ) | |

**BEFORE: CLAY, COOK and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.**

Defendants-Appellants Stephen Busch, Patrick Cook, Michael Prysby, Liane Shekter Smith, Bradley Wurfel and Daniel Wyant, employees of the Michigan Department of Environmental Quality, ("MDEQ Defendants") appeal the district court's order remanding this case to the Michigan Court of Claims on the basis that it was improperly removed. Finding this court's prior decision in *Mays v. City of Flint, Michigan*, 871 F.3d 437 (6th Cir. 2017) controlling, we AFFIRM.

### I. Background

This case arises from the water crisis in Flint, Michigan. Plaintiff Nappier and minor T.N. ("Plaintiff") are residents of Flint. Seeking to represent a class

> of all individuals who, from April 25, 2014 through the date of trial, are or were minor children (age 17 years and younger) who are or were residing in the City of Flint, Michigan and who have been brain damaged as a result of the ingestion of lead poisoned water from pipes and service lines that supplied water from the Flint River without the use of any corrosion control,

(R. 1-3, PID 45; *see also id.* at PID 55-57), plaintiff filed her class-action complaint in the Michigan Court of Claims on March 23, 2016, alleging that Defendants breached various duties relating to the Flint water supply.

There are numerous defendants, including various state officials, department heads and program heads, emergency managers, and the appellant MDEQ employees. On May 31, MDEQ Defendant Busch removed the case to the U.S. District Court for the Western District of Michigan, asserting federal subject-matter jurisdiction under the federal-officer removal statute, 28 U.S.C. § 1442, and federal-question jurisdiction under 28 U.S.C. § 1441. On June 14, 2016, several other defendants (State Defendants) filed a motion to remand, advancing arguments that are no longer relevant. During the remainder of 2016, various defendants filed a variety of motions, including motions to dismiss and a motion to change venue.

After the district court scheduled oral argument on State Defendants' motion to remand, it was provided with supplemental authority calling its attention to the decision of the U.S. District Court for the Eastern District of Michigan in *Mays v. City of Flint*, No. 5:16-cv-11519-JCO-MKM (E.D. Mich. Oct. 6, 2016). The Plaintiffs in *Mays*, purporting to represent "a class of thousands of Flint water users," sued numerous defendants, including MDEQ defendants, alleging "gross negligence, fraud, assault and battery, and intentional infliction of emotional distress." (R. 60-1 at PID 6737.) The MDEQ defendants removed the case to federal court, invoking the same bases for federal jurisdiction as invoked here. The district court found that removal was improper because the MDEQ defendants had not shown that they were acting under federal officers or were being sued for acts performed under color of federal office, and because

the plaintiffs' claims did not raise a federal question. The supplemental authority also included this court's order denying the *Mays* MDEQ defendants' motion for a stay of the district court's remand order pending appeal, for failure to show "a strong likelihood of success on the merits." (R. 60-2.)

The district court issued a memorandum and order canceling the scheduled oral argument and ordering further briefing on why the court should not remand the case to state court for lack of subject-matter jurisdiction in light of *Mays*. After reviewing the supplemental briefs, the district court issued its opinion finding that removal was improper and remanding the case to state court. Citing *Mays*, the district court found that MDEQ Defendants did not qualify for federal-officer removal because of their "independent role as enforcer of Michigan law and the [Safe Drinking Water Act (SDWA)]." (R. 75 at PID 7399.) The district court also cited *Mays* in support of its conclusion that Plaintiff's state-law negligence claim did not raise a federal question.

During the pendency of this appeal, a divided panel of this court affirmed the district court's remand order in *Mays*, and this court denied rehearing en banc.[1]

## II.    Discussion

"We review de novo the district court's determination that it lacked subject-matter jurisdiction and its consequent decision to issue a remand order." *Mays*, 871 F.3d at 442 (citing *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 404 (6th Cir. 2007)).

---

[1] On October 10, 2017, the MDEQ appellants in *Mays* filed a petition for rehearing en banc. That petition was subsequently denied and, on February 13, 2018, the MDEQ appellants filed a petition for certiorari with the United States Supreme Court.

### A. Federal-Officer Removal

The federal-officer removal statute provides that the following may remove a civil action to federal district court:

> The United States or any agency thereof or any officer (*or any person acting under that officer*) of the United States or of any agency thereof, in an official or individual capacity, *for or relating to any act under color of such office* or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1) (emphasis added). When the removing party is not a federal officer, we apply a three-part test to determine whether removal is proper. The removing party must demonstrate that: (1) it is a "person" within the meaning of the statute who "acted under a federal officer"; (2) "it performed the actions for which it is being sued under color of federal office"; and (3) "it raised a colorable federal defense." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010) (alterations, quotations, and citations omitted). The Supreme Court has defined "acting under":

> In this context, the word "under" must refer to what has been described as a relationship that involves "acting in a certain capacity, considered in relation to one holding a superior position or office." That relationship typically involves "subjection, guidance, or control." In addition, precedent and statutory purpose make clear that the private person's "acting under" must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior.

*Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 151–52 (2007) (citations omitted).

MDEQ Defendants argue that (1) the district court erroneously resolved doubts about the propriety of removal in favor of remand rather than in favor of broad federal-officer removal; (2) although they were implementing Michigan's SDWA, they were "acting under" federal officers at the United States Environmental Protection Agency (USEPA) because (a) they were performing tasks that the USEPA otherwise would have been required to undertake, (b) the USEPA retained authority to control MDEQ's actions and MDEQ was subject to USEPA

supervision, and (c) the USEPA provided federal funding for MDEQ to administer and enforce the federal SDWA; (3) Michigan's SDWA and its decision to take primary enforcement authority for the federal SDWA, and the duties that Plaintiff alleges MDEQ Defendants breached, only came about because of the federal SDWA; (4) the district court erred when it found that the USEPA was merely assisting MDEQ to perform its duties, and the reverse is true; (5) plaintiffs satisfied the "causal nexus" requirement for federal officer removal; and (6) the SDWA preempts state tort claims and they are therefore entitled to immunity.

In *Mays*, this court held that the relationship between the MDEQ and the USEPA "is a model of cooperative federalism, not an agency relationship," 871 F.3d at 447, and "MDEQ Defendants were not 'acting under' the EPA and thus are not eligible for federal-officer removal," *id.* at 449. The MDEQ Defendants do not argue that *Mays* is not controlling, and it is clear that a ruling in the MDEQ Defendants' favor would be contrary to *Mays*. "It is firmly established that one panel of this court cannot overturn a decision of another panel; only the court sitting en banc can overturn such a decision." *United States v. Lanier*, 201 F.3d 842, 846 (6th Cir. 2000) (citing *United States v. Smith*, 73 F.3d 1414, 1418 (6th Cir. 1996)). Because *Mays* is legally indistinguishable, we affirm the district court's ruling that federal-officer removal was improper.

### B. Federal-Question Jurisdiction

MDEQ Defendants also argue that they established federal-question jurisdiction. A case may be removed to federal district court if the court would have had original jurisdiction. 28 U.S.C. § 1441(a). "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *Id.* § 1331. In this case, plaintiff did not allege any federal claims on the face of her complaint. "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed,

(3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (discussing *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313-14 (2005)). "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Id.* at 260. "[T]he presence of a claimed violation of a federal statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction." *Mays*, 871 F.3d at 449 (internal alterations omitted) (quoting *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 814 (1986)).

MDEQ Defendants argue that the district court erred by finding that Plaintiff's "'garden-variety' state-law tort claim . . . does not raise a federal question at the level of importance" required by *Grable*, (R. 75, PID 7403), because violations of the SDWA and the Lead Copper Rule will underpin state tort claims in jurisdictions across the country. They also assert that federal jurisdiction would not upset the balance of federal and state responsibilities.

But *Mays* resolved this issue as well, finding that the plaintiffs' claims did not raise a substantial federal question. 871 F.3d at 449–50. Again, because *Mays* is legally indistinguishable on this issue, we affirm the district court's determination that § 1441 removal was improper.[2]

### III.    Conclusion

For these reasons, we **AFFIRM**.

---

[2] Appellee State Defendants additionally argue that removal was improper under § 1441 for lack of unanimity. "[T]here is a rule of unanimity that has been derived from the statutory language prescribing the procedure for removing a state action to federal court, 28 U.S.C. § 1446." *Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 516 (6th Cir. 2003). *See* 28 U.S.C. § 1446(b)(2)(A) ("When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action."). MDEQ Defendants do not dispute that Appellee State Defendants did not consent to removal. Thus, § 1441 removal was additionally improper for lack of unanimity.