In the

# United States Court of Appeals
### For the Seventh Circuit

No. 13-3787

HARTLAND LAKESIDE JOINT NO. 3 SCHOOL DISTRICT, OCONOMOWOC AREA SCHOOL DISTRICT, and ARROWHEAD UNION HIGH SCHOOL DISTRICT,

*Plaintiffs-Appellants*,

*v.*

WEA INSURANCE CORPORATION, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 12-C-154 — **William E. Callahan, Jr.**, *Magistrate Judge*.

ARGUED MAY 23, 2014 — DECIDED JUNE 27, 2014

Before BAUER and EASTERBROOK, *Circuit Judges*, and ST. EVE, *District Judge*.*

EASTERBROOK, *Circuit Judge*. Section 1102 of the Patient Protection and Affordable Care Act, 42 U.S.C. §18002, pro-

---

* Of the Northern District of Illinois, sitting by designation.

vides $5 billion to reimburse employers and their proxies for some outlays on early retirees' medical care. WEA Insurance, which administers health-care programs on behalf of many school districts in Wisconsin, told them that it would collect on their behalf. It decided to use the federal money to reduce premiums in future years. The school districts contended that WEA should have rebated premiums for the years in which the retirees received the medical care that led to the federal payments. The difference matters to school districts that want to switch carriers. WEA's plan to cut future rates, rather than provide rebates, gave it a competitive advantage: a district that switched to another insurer would never see a penny of the federal money.

Three districts that did switch filed this suit, in Wisconsin court, contending that state law requires WEA to apply the receipts so that the school districts whose expenses justified the federal payments receive the economic benefit. The school districts characterize WEA's choice to allocate none of the money to districts that switch carriers as a form of conversion. All of the complaint's claims arise under state law, and all litigants are citizens of Wisconsin. WEA nonetheless removed to federal court, contending that §18002 and its implementing regulations, 45 C.F.R. §§ 149.1 to 149.700, are the crux of the litigation. A magistrate judge, presiding by consent under 28 U.S.C. §636(c), denied the districts' motion to remand. 2012 U.S. Dist. LEXIS 57085 (E.D. Wis. Apr. 24, 2012). The judge certified the issue under 28 U.S.C. §1292(b), but a motions panel declined to accept the interlocutory appeal. After the magistrate judge ruled in WEA's favor on the merits, the school districts appealed from the final decision. Subject-matter jurisdiction is our first order of business.

Removal was proper if, and only if, the school districts' claim arises under federal law. 28 U.S.C. §§ 1331, 1441. Yet the complaint relies entirely on state law, and although WEA contends that federal law is material to the suit, the existence of a federal issue rarely allows removal. See, e.g., *Gunn v. Minton*, 133 S. Ct. 1059 (2013); *Bennett v. Southwest Airlines Co.*, 484 F.3d 907, rehearing denied, 493 F.3d 762 (7th Cir. 2007).

"Rarely" differs from "never," and WEA relies on *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), for the proposition that, when the principal issue is federal, removal is permitted. The magistrate judge agreed, writing that WEA has a good defense if federal law (including the regulations) allows insurers to collect the payments as the effective sponsors of the health-care plans. The magistrate judge did not conclude that federal law occupies the field (the misleadingly named doctrine that "complete preemption" supplies federal jurisdiction); nothing in §18002 suggests that all claims related to its benefits necessarily are federal. Instead the judge thought that a federal issue is itself enough for federal jurisdiction.

*Grable* announced a multi-factor approach that has been hard to use consistently. Its application here is doubtful, since WEA does not contend that the *only* material issue is federal. To make such an argument, it would have to concede that the school districts have a good claim under state law. Yet far from conceding this, WEA denies that the districts have valid state-law claims. Thus even from WEA's perspective, the case contains non-trivial issues of both state and federal law.

Moreover, it is difficult to see a federal defense. There is no doubt a federal issue. The school districts have argued that WEA, as an insurer rather than either a sponsor or fiduciary of a welfare-benefit plan governed by ERISA, see *Wisconsin Education Association Insurance Trust v. Iowa State Board of Public Instruction*, 804 F.2d 1059 (8th Cir. 1986), is ineligible to collect funds under §18002 except as the school districts' agent. See 42 C.F.R. §423.882. If that's so, then it is easy to classify WEA's retention of the money as a form of conversion or breach of duty to the school districts, for which state law supplies a remedy.

The magistrate judge thought otherwise, ruling that the statute and regulations allow WEA to treat itself as a plan sponsor rather than (solely) as the school districts' agent for collection. The judge added that reducing premiums in future years complies with the federal statute or regulations. Suppose that's right: Where's the federal defense? To say that a particular plan of distribution complies with federal law (as a rebate also would) is not the end of the line. Many things comply with federal law but violate state law. To displace state law, federal law must require a particular course of action at odds with state rules, and the magistrate judge did not conclude that §18002 or the regulations does that.

But we are getting ahead of ourselves. The magistrate judge *thought* that a federal rule blocks the districts' recovery. If *Grable* allows federal-issue removal, and the magistrate judge is wrong, that would be a reason to reverse on the merits, not to send the case back to state court. See, e.g., *Bell v. Hood*, 327 U.S. 678 (1946). We must approach subject-matter jurisdiction on the assumption that WEA's federal arguments are not frivolous.

WEA's understanding of *Grable* is the sticking point. WEA treats it as allowing the removal of cases in which the predominant issue concerns federal law. Some language in *Grable* might be understood that way. But the Court held in *Gunn* that this understanding is unsound. The Justices wrote that "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." 133 S. Ct. at 1065. *Gunn* gives teeth to parts (1) and (4) by holding that a legal malpractice case could not be removed even though analysis of the claim depended on understanding and application of federal patent law. Whether the lawyers had provided competent work depended on how well they had dealt with issues of patent law, and that couldn't be decided without considering the substance of the ex-client's contention that their former lawyers should have made particular patent-specific arguments. Yet the Court held that the litigation belonged in state court, for state law defined the lawyers' duties to their clients.

*Gunn* also observed that the litigation in *Grable* had depended on federal law from the outset, which limits *Grable*'s scope. And other post-*Grable* decisions, including *Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006), and *Pollitt v. Health Care Service Corp.*, 558 F.3d 615 (7th Cir. 2009), hold that a federal role in insurance is not enough to establish that a state-law suit really arises under federal law. In *Empire* the Court held that a suit to recoup health benefits paid under a plan for federal employees arose under state law, even though the plan was a federal creation.

The removal of this litigation does not satisfy either part (1) or part (4) of *Gunn*. The school districts' suit does not "necessarily" raise any issue of federal law. *Grable* involved a quiet-title action under state law in which *A* contended that *B*'s title to real estate was invalid because it had been conveyed to *B* by the United States following a seizure to satisfy *A*'s tax liabilities. *A* insisted that the seizure and transfer were vitiated by inadequate notice. State law provided the remedy, a declaration of ownership, but it was impossible to decide who owned the land without deciding whether the federal government followed legal requirements when seizing the parcel from *A* and conveying it to *B*. Deciding an issue of federal law was inescapable, and the national government itself was vitally concerned about the outcome; an adverse decision could undercut its ability to collect taxes. Nothing remotely similar is true about the dispute between WEA and the school districts.

As for (4) on *Gunn*'s list: how can one resolve a dispute between an insurer and its clients about the size of premiums *without* stepping on states' toes? The McCarran-Ferguson Act, 15 U.S.C. §§ 1011–15, gives states preeminence in the domain of insurance regulation. Most insurance disputes arise under state law and are resolved in state court. They can reach federal court, if at all, only under the diversity jurisdiction. This is so well entrenched that even ERISA, which may contain the broadest preemption clause of any federal statute and completely occupies the field of employees' health and welfare benefits, see *Franchise Tax Board of California v. Construction Laborers Vacation Trust*, 463 U.S. 1 (1983), has an exception for insurance, which it leaves to state law. 29 U.S.C. §1191(a)(1). Treating *every* dispute about what insurers do with money received under §18002 as aris-

ing under federal law, and ignoring state-law doctrines about insurers' duties to their clients, would disrupt the state–federal allocation approved by Congress in the McCarran-Ferguson Act and ERISA.

Approaching this subject from a different angle confirms our perspective. The parties do not contend that §18002 creates a private right of action. Thus Congress not only did not affirmatively authorize federal litigation between competing beneficiaries of the program (though claims against the agency under the Administrative Procedure Act could be possible) but also implied that these disputes should be resolved in state court. See, e.g., *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804 (1986). A dispute between rival beneficiaries of the program about who ultimately gets the money is outside the scope of the federal rule.

Many federal programs create entitlements while leaving ownership to state law. Think of patent law, which confers a property right on the inventor but allows free transfer to others by contract. Copyright law works the same way. *T.B. Harms Co. v. Eliscu*, 339 F.2d 823 (2d Cir. 1964) (Friendly, J.), holds that disputes about ownership of intellectual property arise under state law unless the (asserted) copyright proprietor seeks one of the remedies provided by federal law (for example, by maintaining that someone is liable for infringement). Our circuit has reached the same conclusion. See, e.g., *Affymax, Inc. v. Ortho–McNeil–Janssen Pharmaceuticals, Inc.*, 660 F.3d 281 (7th Cir. 2011) (collecting cases). See also *Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159 (7th Cir. 1994) (rights under a contract that is part of a sale in bankruptcy arise under state law).

The current litigation is about ownership following distribution by the national government. Consider a lender that asserts a security interest in (and ultimately ownership of) a refund of federal income taxes. The lender's claim would arise under state law, notwithstanding the federal source of the money. Likewise the school districts' claim to the economic benefit of the federal subsidies that were justified by the medical expenses of the districts' retirees is a dispute about ownership and belongs in state court.

We appreciate that the school districts, which initially wanted a remand, now prefer a final decision in federal court, where they believe (despite their loss in the district court) that they can prevail outright. If this case is returned to state court, it must start anew—the magistrate judge's decision will have no effect beyond the force of its reasoning— and more than two years will have been lost. But practical considerations never justify a federal court's adjudication of a suit over which it lacks subject-matter jurisdiction. When we asked for supplemental jurisdictional briefs, the school districts admirably told us what they wanted (immediate decision in their favor) yet carefully explained why they had concluded that they are not entitled to that relief, because the federal courts lack jurisdiction. Right they are.

The judgment of the district court is vacated, and the case is remanded with instructions to return the litigation to state court.