In the

# United States Court of Appeals
## For the Seventh Circuit

_____

Nos. 14-1673 & 14-1808

EVERGREEN SQUARE OF CUDAHY,
GRANT PARK SQUARE APARTMENTS CO. and
WASHINGTON SQUARE APARTMENTS CO.,

*Plaintiffs-Appellants,*

*v.*

WISCONSIN HOUSING AND ECONOMIC
DEVELOPMENT AUTHORITY,

*Defendant, Third-Party Plaintiff,*
*Appellee, Cross-Appellant,*

*and*

JULIAN CASTRO, Secretary of the United States
Department of Housing and Urban Development,

*Third-Party Defendant,*
*Cross-Appellee.*

_____

Appeals from the United States District Court for the
Eastern District of Wisconsin.
No. 2:13-cv-00743-JPS — **J. P. Stadtmueller**, *Judge.*

_____

ARGUED NOVEMBER 5, 2014 — DECIDED JANUARY 12, 2015

_____

Before BAUER, ROVNER, and TINDER, *Circuit Judges*.

TINDER, *Circuit Judge*. We consider whether this case, a breach-of-contract action related to the provision of federally-subsidized housing, presents one of the rare instances when federal-question jurisdiction exists over a complaint asserting only state-law causes of action.

Plaintiffs-Appellants Evergreen Square of Cudahy, Grant Park Square Apartments Company and Washington Square Apartments Company are the owners of multifamily housing rental projects in Wisconsin that are assisted by the United States Department of Housing and Urban Development ("HUD") program under Section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437f ("Section 8").[1] Plaintiffs sued the Wisconsin Housing and Economic Development Authority ("WHEDA") in federal court alleging WHEDA breached certain Housing Assistance Payments ("HAP") contracts by failing to approve annual rent increases, as required by federal law, and by requiring Plaintiffs to submit rent comparability studies as a prerequisite to receiving rent increases. WHEDA in turn filed a Third-Party Complaint against HUD, alleging that, if WHEDA is found to have breached the HAP contracts, then those breaches resulted from WHEDA following congressional and HUD directives. Both Plaintiffs' Amended Complaint (the operative pleading) and WHEDA's Third-Party Complaint alleged that

---

[1]   In order to aid families "in obtaining a decent place to live" and promote "economically mixed housing," Section 8 authorizes rent subsidies on behalf of low-income families living in rental housing owned primarily by non-public entities such as Plaintiffs. 42 U.S.C. § 1437f(a).

the district court had subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

WHEDA filed a motion to dismiss seeking to obtain, among other things, a dismissal of Plaintiffs' Amended Complaint. Although the motion did not invoke Federal Rule of Civil Procedure 12(b)(1), WHEDA did mention, at least in passing—in two paragraphs of its 30-page supporting memorandum—that the district court was obligated to consider *sua sponte* the existence of federal jurisdiction, and urged the district court to "specifically find that federal … jurisdiction is present in this case before moving on to the merits of this motion." Perhaps lulled into complacency by the brevity of WHEDA's jurisdictional remarks and its failure to cite Rule 12(b)(1), Plaintiffs and HUD each filed briefs without mentioning jurisdiction. The district court then issued a short order dismissing Plaintiffs' Amended Complaint for lack of subject-matter jurisdiction, and dismissing WHEDA's Third-Party Complaint as being wholly dependent upon the dismissed Amended Complaint. Plaintiffs filed a notice of appeal, and WHEDA filed a cross-appeal seeking reinstatement of the Third-Party Complaint in the event Plaintiffs' Amended Complaint is reinstated.

The district court's order, which was entered without the benefit of the parties' full briefing on jurisdiction, finds itself without an ally on appeal. All parties agree the district court erred and urge us to find that federal-question jurisdiction exists over the claims raised in the Amended Complaint. Technically, the parties' united front is irrelevant since the parties cannot confer subject-matter jurisdiction by agreement, *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982), and federal courts are obli-

gated to inquire into the existence of jurisdiction *sua sponte*, *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 593 (2004). While we applaud the district court's vigilance in policing jurisdiction, *see id.*, a court in doubt of its own jurisdiction generally is well-advised to solicit the parties' views on the subject prior to ruling.

We review *de novo* a district court's dismissal of a complaint for lack of subject-matter jurisdiction. *Commonwealth Plaza Condo. Ass'n v. City of Chicago*, 693 F.3d 743, 745 (7th Cir. 2012). Plaintiffs invoked jurisdiction pursuant to 28 U.S.C. § 1331, which grants district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." A case may "aris[e] under" federal law in two ways. *Gunn v. Minton*, --- U.S. ----, 133 S. Ct. 1059, 1064 (2013). "Most directly, a case arises under federal law when federal law creates the cause of action asserted." *Id*. This "accounts for the vast bulk of suits that arise under federal law," *id*., but it does not apply to the state-law breach-of-contract claims asserted in Plaintiffs' Amended Complaint. "[E]ven where a claim finds its origins in state rather than federal law," the Supreme Court has "identified a special and small category of cases in which arising under jurisdiction still lies." *Id*. (internal quotation marks omitted).

In order to decide whether a case falls within this slim category, we must ask whether the "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). Stated differently, "federal jurisdiction over a state law claim

will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 133 S. Ct. at 1065. "Where all four of these requirements are met, … jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Id*. (quoting *Grable*, 545 U.S. at 313–14); *see also Grable*, 545 U.S. at 312 ("The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues.") (citation omitted). This inquiry rarely results in a finding of federal jurisdiction. *See Hartland Lakeside Joint No. 3 Sch. Dist. v. WEA Ins. Corp.*, 756 F.3d 1032, 1033 (7th Cir. 2014). However, "'[r]arely' differs from 'never.'" *Id*.

In *Grable*, the Internal Revenue Service seized real property owned by the petitioner to satisfy a federal tax delinquency and gave notice of the seizure to the petitioner by certified mail before selling the property to the respondent. 545 U.S. at 310. Five years later, the petitioner brought a quiet title action in state court claiming that the respondent's title was invalid because a federal statute required the IRS to give notice of the seizure and sale by personal service rather than by certified mail. *Id*. at 311. The respondent removed the case to federal district court on the basis that the petitioner's title claim depended on the interpretation of federal tax law. The Supreme Court held that federal "arising under" jurisdiction existed over the petitioner's state-law quiet

title action. *Id*. at 320. The Court found that whether the petitioner was given notice within the meaning of the applicable federal statute was "actually in dispute" and an "essential element" of the petitioner's quiet title action, and was "an important issue of federal law that sensibly belongs in a federal court." *Id*. at 315. The Court stated that the federal government "has a strong interest in the prompt and certain collection of delinquent taxes," and "because it will be the rare state title case that raises a contested matter of federal law, federal jurisdiction to resolve genuine disagreement over federal tax title provisions will portend only a microscopic effect on the federal-state division of labor." *Id*. (internal quotation marks omitted).

Prior to applying the *Grable* inquiry to the breach-of-contract claims raised in the Amended Complaint, we review two cases which have trod on similar ground. In *Price v. Pierce*, 823 F.2d 1114 (7th Cir. 1987), we held that prospective Section 8 tenants' claims for breach of a HAP contract against a property owner and a state housing agency fell within the scope of federal-question jurisdiction. *Id*. at 1120–21. We stated that the "argument for a federal rule is particularly strong in these housing cases," since "it would be odd to think that a suit by tenants and applicants for federally subsidized housing against developers of such housing for breach of contracts approved by HUD and fundamental to the achievement of HUD's objectives under [42 U.S.C.] section 1437f would have to be brought in state court and decided in accordance with state contract law." *Id*. at 1120.

The First Circuit in *One & Ken Valley Housing Group v. Maine State Housing Authority*, 716 F.3d 218 (1st Cir. 2013), relied upon *Price* in deciding that federal "arising under"

jurisdiction existed over claims that were remarkably similar to the claims raised by Plaintiffs in this case. As in this case, the *Ken Valley* plaintiffs were apartment owners alleging that a state housing agency breached HAP contracts by refusing to grant annual rent increases pursuant to Section 8. *Id*. at 220. The First Circuit held that the following "federal ingredients," in combination, satisfied *Grable*'s requirements for federal jurisdiction: the dispute involved a federal contractor's implementation of a federal program; the HAP contracts were drafted and approved by HUD and signed by a HUD official; and the plaintiffs alleged that the federal contractor (i.e., the state housing agency) was in breach of the HAP contract by following a guideline promulgated by HUD pursuant to a federal statute. *Id*. at 224. The *Ken Valley* court noted that "other Section 8 landlords have brought almost identical actions elsewhere," and the "outcomes of the legal questions in these cases will dictate whether HUD and/or the public housing agencies that administer Section 8 must pay millions of dollars in additional rents to landlords, which—in turn—could require the agencies to scale back the scope of the Section 8 program." *Id*. at 225. This issue "'is potentially so important to the success of the [Section 8] program—since on its resolution may turn the amount of lower-income housing actually provided—that we believe that Congress, had it thought about the matter, would have wanted the question to be decided by federal courts applying a uniform principle.'" *Id*. (quoting *Price*, 823 F.2d at 1119–20).

We find *Ken Valley*'s application of the Grable inquiry to be persuasive. The resolution of this case turns on issues of federal law—specifically, the application of 42 U.S.C. § 1437f and related regulations and notices promulgated by HUD,

*see* 24 C.F.R. § 883.101, *et seq*. These issues are necessarily raised, actually disputed, and substantial. While state law may create the breach-of-contract causes of action, the only disputed issues involve the proper interpretation of Section 8 and HUD's implementing guidance. *Cf. Hartland*, 756 F.3d at 1033–34 (applying the *Grable* inquiry and finding no jurisdiction because, in part, "even from [plaintiff's] perspective, the case contains non-trivial issues" of state law); *Bennett v. Sw. Airlines Co.*, 484 F.3d 907, 909 (7th Cir. 2007) (same, when "everything will depend on a fact-bound question" and the "meaning of federal statutes and regulations may play little or no role"). In particular, Plaintiffs and WHEDA dispute how HUD-promulgated "Automatic Annual Adjustment Factors" should be applied to adjust rents at Plaintiffs' properties, and which party bears the burden of producing a rent comparability study pursuant to § 1437f and HUD's regulations and notices.

These issues are "capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 133 S. Ct. at 1065. Unlike a typical breach-of-contract case, the HAP contracts at issue are ones to which HUD, a federal agency, prescribes both the form and content. The HAP contracts must be approved by HUD and their terms are administered pursuant to federal laws and regulations. WHEDA expressly contends that, if there was any breach of contract, then federal law required it. *See Hartland*, 756 F.3d at 1034 ("Many things comply with federal law but violate state law. To displace state law, federal law must require a particular course of action at odds with state rules…."). Similar lawsuits have been brought nationwide by Section 8 property owners. *Ken Valley*, 716 F.3d at 225 & n.5. In the aggregate, these cases have the potential to sub-

stantially influence the scope and success of the Section 8 program. *See id*. at 225. Accordingly, the federal government has a strong interest in these issues being decided according to uniform principles. The "desirability of a uniform interpretation of these contracts … will best be achieved by allowing suit in federal courts." *Price*, 823 F.2d at 1120. We find that this case fits within the "special and small category of cases" in which federal "arising under" jurisdiction lies over a complaint raising state-law causes of action. *Gunn*, 133 S. Ct. at 1064 (internal quotation marks omitted).

We pause to remark upon an issue raised by WHEDA. If Plaintiffs had initially filed their complaint in Wisconsin state court, and WHEDA in turn filed its third-party complaint against HUD, then HUD would likely have removed the state-court action to federal district court pursuant to 28 U.S.C. § 1442(a). In such a situation, there would have been no question about federal jurisdiction. In this case, if we were to affirm the district court's dismissal for lack of subject-matter jurisdiction, this same outcome would likely result. All of the parties would wind up back in federal court where they began, with nothing to show for their troubles. In short, WHEDA contends that considerations of judicial economy militate against affirming a "pointless" dismissal. *See City of Joliet v. New W., L.P.*, 562 F.3d 830, 833 (7th Cir. 2009) (noting it would be "pointless to order this suit remanded, only to have HUD re-remove it in a trice"). The snag in this line of reasoning is that federal courts possess only that power authorized by Constitution and statute, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), and considerations of judicial economy alone may not expand federal jurisdiction. *Cf. City of Joliet*, 562 F.3d at 833 (finding the presence of subject-matter jurisdiction, apart

from concerns about judicial economy). Happily in this instance, both considerations of judicial economy and the jurisdictional reach of 28 U.S.C. § 1331 direct the same outcome.

Finally, we consider WHEDA's request that we affirm on alternate grounds by finding in its favor on the merits. The district court did not reach the merits, but WHEDA again resorts to what it contends are considerations of judicial economy. Plaintiffs oppose WHEDA's request, contending that they have not been afforded a sufficient opportunity to present all of their arguments. After review of the record, we find that, regardless of what considerations of judicial economy might counsel, overriding considerations of justice dictate that we remand for decision on the merits in the first instance by the district court.[2] We make the same finding with respect to HUD's request that we reach the merits of WHEDA's Third-Party Complaint.

For the foregoing reasons, we REVERSE the decision of the district court and REMAND with instructions to reinstate Plaintiffs' Amended Complaint and WHEDA's Third-Party Complaint.

---

[2]  Although we have found the reasoning of *Ken Valley* to be persuasive on the jurisdictional issue, we express no opinion about the persuasiveness of *Ken Valley*'s reasoning on the merits.