In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-3728

HEATHER STUDER,

*Plaintiff-Appellant,*

*v.*

KATHERINE SHAW BETHEA HOSPITAL,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 15 C 50242 — **Frederick J. Kapala**, *Judge.*

ARGUED MAY 19, 2017 — DECIDED AUGUST 10, 2017

Before WOOD, *Chief Judge*, and POSNER and KANNE, *Circuit
Judges*.

KANNE, *Circuit Judge*. Katherine Shaw Bethea Hospital is a
not-for-profit healthcare provider in Dixon, Illinois. Heather
Studer worked at the hospital as an occupational therapist un-
til she resigned. After she resigned, she filed a small-claims
complaint in Illinois state court, alleging that the hospital vi-
olated certain provisions of the Illinois Wage Payment and
Collection Act ("IWPCA") by failing to pay her money that

she had accrued under the hospital's Paid Days Leave policy. The hospital removed the suit to federal court, claiming that Studer's claim was completely preempted by the Employee Retirement Income Security Act of 1974 ("ERISA").

Studer then filed a motion to remand her suit to state court, challenging the hospital's preemption claim and asserting that the district court did not have jurisdiction over her state-law claim; the hospital filed a motion for summary judgment. The district court denied Studer's motion to remand, holding that it had federal-question jurisdiction because ERISA completely preempted the state-law claim. The court then granted the hospital's motion for summary judgment, holding that Studer had failed to name the welfare benefit plan as a defendant, which ERISA requires in most instances. *See Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1490 (7th Cir. 1996) (citing 29 U.S.C. § 1132(d)(2)). In granting the motion, the court permitted Studer "to file an amended complaint naming the appropriate defendant and to issue summons." (R. 27 at 6.)

But instead of filing an amended complaint, Studer filed a Rule 59(e) motion to alter or amend the judgment, again arguing that ERISA did not preempt her claim. The district court denied that motion, and this appeal followed. On appeal, Studer again contends that her IWPCA claim was not preempted by ERISA. Because we agree with the district court, we affirm.

## I. ANALYSIS

Ordinarily, a defendant cannot remove a case to federal court unless the plaintiff's complaint demonstrates that the plaintiff's case arises under federal law. *Aetna Health Inc. v.*

*Davila*, 542 U.S. 200, 207 (2004). This is known as the "well-pleaded complaint" rule. *Id.* (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 9–10 (1983)).

Under this rule, "the existence of a federal defense normally does not create statutory 'arising under' jurisdiction." *Id.* But there is an exception "[w]hen a federal statute wholly displaces the state-law cause of action through complete preemption." *Id.* (quoting *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003)). In those circumstances, a defendant can remove a plaintiff's state-law claim if the defendant can show complete preemption because the state law claim, "even if pleaded in terms of state law, is in reality based on federal law." *Id.* at 208 (quoting *Anderson*, 539 U.S. at 8).

ERISA is one of those federal statutes with expansive preemptive power. *See Hartland Lakeside Joint No. 3 Sch. Dist. v. WEA Ins. Corp.*, 756 F.3d 1032, 1035 (7th Cir. 2014) ("ERISA … may contain the broadest preemption clause of any federal statute and completely occupies the field of employees' health and welfare benefits … ."). And with the exception of a few identified circumstances, ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" created by any employer engaged in interstate commerce. ERISA § 514(a), 29 U.S.C. § 1144(a).

In *Davila*, the Supreme Court created a two-step test to determine if a plaintiff's state-law claim is preempted by ERISA: a state-law claim is completely preempted (1) "if an individual, at some point in time, could have brought his claim under" ERISA's expansive civil enforcement mechanism—ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)—and (2)

"where there is no other independent legal duty that is impli-
cated by a defendant's actions." *Davila*, 542 U.S. at 210. We
consider each step of this test in turn.

Here, to analyze *Davila*'s first step, we must initially deter-
mine whether the hospital had created an ERISA employee
welfare benefit plan and, if so, whether Studer was a partici-
pant in that plan. *See* ERISA § 502(a)(1), 29 U.S.C. § 1132(a)(1)
(empowering a "participant or beneficiary" of an ERISA plan
"to bring a civil action"). To make these determinations, we
first look at the hospital's employee benefit policies.

We begin with the Paid Days Leave ("PDL") policy, which
the hospital created "[t]o provide [its employees] time away
from the work environment in a way that conforms to an in-
dividual's lifestyle by allowing paid time off to be used for
vacation, sick, personal, etc." (R. 17-2 at 40.) Under the PDL
policy, certain hospital employees would accrue "PDL
hours"—which those employees could use to take days off
from work—based on a variable accrual rate that increased
with the employees' seniority. (*Id.*) For example, "[f]ull-time
regular employees" hired prior to December 20, 2009 with "0-
9 years of service" accrued 7.38 PDL hours for every 80 hours
of paid work. (*Id.*) And that accrual rate increased with addi-
tional years of service. The policy further permitted employ-
ees to accumulate a maximum of 320 PDL hours at any one
time.

The PDL policy also specifically incorporated other "em-
ployee benefits" including the "Voluntary Employees' Benefit
Association" ("VEBA") plan. (*Id.*) As discussed in more detail
below, the VEBA plan worked in conjunction with the PDL
policy, further conditioning the accrual of participating em-
ployees' PDL hours. The plan also dictated how participating

employees could use those hours after their employment with the hospital ended.

The hospital contends that this VEBA plan was an ERISA employee welfare benefit plan. And we agree. ERISA defines an "employee welfare benefit plan" as

> [A]ny plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries … medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment … .

ERISA § 3(1), 29 U.S.C. § 1002(1).

The hospital intentionally created its VEBA plan to give its employees ERISA healthcare benefits. In fact, the plan documents specifically referenced "ERISA," providing participants with information about their "rights and protections under [ERISA]." (R. 17-2 at 29.) And the plan's stated purpose was "to provide certain Employees with an opportunity to receive reimbursement for eligible Health Care Expenses." (R. 17-2 at 5.)

To accomplish this purpose, the plan provided eligible employees with accounts into which the hospital would deposit money under two circumstances. First, if an employee "reach[ed] the maximum accumulation of PDL hours allowed, PDL hours over the maximum [would] be converted to dollars and deposited to the employee's VEBA account." (R. 17-2 at 42.) And second, upon an employee's termination, the hospital would pay that employee any accumulated PDL

hours "up to 80 hours, at the current salary," but "[t]he remaining hours [would] be converted to dollars and deposited" into that employee's VEBA account. (R. 17-2 at 45.)

Employees could then access the money that they had accumulated in their VEBA accounts as reimbursement for qualifying medical expenses after their employment with the hospital ended. The VEBA plan also provided employees with a tax benefit: because any money that employees withdrew from their VEBA accounts qualified as a reimbursement for medical expenses, that money would not be included in their gross incomes and thus would not be subject to federal income tax. *See* I.R.C. §§ 105(b), 106.

Based on these facts, we think it's clear that the VEBA plan was an employee welfare benefit plan under ERISA.

As a result, we must next determine whether Studer was a participant in the VEBA plan. ERISA defines a "participant" as "any employee or former employee of an employer … who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer." ERISA § 3(7), 29 U.S.C. § 1002(7).

The hospital's VEBA plan documents explained that employees who worked "a regular work schedule" and who were "eligible to accrue paid days leave" were automatically enrolled in the plan. (R. 17-2 at 5.) Enrolled employees then were given annual opportunities to waive any further participation. Upon their termination, enrolled employees could access any funds in their VEBA accounts for qualifying medical expenses. Studer, who worked a regular work schedule and accrued paid days leave, was automatically enrolled in the VEBA plan, and she doesn't argue that she ever waived her

participation in it. Thus, she was a participant in the plan and became eligible to receive benefits under the plan.

With those conclusions in hand, we now turn to Studer's specific claim. When Studer resigned her employment, she had accrued 251.12 hours of PDL. Following the terms of the VEBA plan, the hospital paid Studer her hourly rate for 80 of those hours. It then converted the remaining 171.12 hours into dollars based on Studer's hourly rate and moved those dollars into Studer's VEBA account. Studer disputes the hospital's moving of that money, claiming that she instead should have been paid directly for those hours.

As a participant in an ERISA benefit plan, ERISA § 502(a)(1)(B) empowered Studer to bring a civil action in federal court "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Although Studer's argument here largely ignores the VEBA plan—and instead focuses on an alleged independent legal duty created by the IWPCA—that argument better suits the second step of *Davila*'s preemption test, which we discuss in greater detail below. For purposes of *Davila's* first step, we characterize Studer's claim as one focused on the misapplication of benefits that Studer was allegedly due under the terms of the PDL policy, which specifically incorporated the VEBA plan. That is exactly the type of claim that ERISA permits a plaintiff to bring. *See* ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). Thus, Studer could have brought her claim under ERISA: *Davila*'s first step has been met.

Next, under *Davila*'s second step, we must determine whether the hospital's decision not to pay Studer directly the

monetary equivalent of 171.12 hours of PDL implicated a legal duty independent of ERISA. Studer claims that it did. She cites a section of the IWPCA, 820 ILCS 115/5, which requires "[e]very employer [to] pay the final compensation of separated employees in full, at the time of separation." That section further provides that, when an employer's "contract of employment or employment policy provides for paid vacations, and an employee resigns … without having taken all vacation time earned in accordance with such contract of employment or employment policy, the monetary equivalent of all earned vacation shall be paid to … her as part of … her final compensation … ." *Id.*

Studer contends that the 171.12 hours of PDL that she accrued and for which she was not directly paid was "earned vacation." As such, Studer claims that she should have been paid for those hours as part of her "final compensation" when her employment terminated. Because the hospital instead moved that money into her VEBA account, she argues that the hospital violated the IWPCA's independent duty "to pay accrued vacation at the time of an employee's separation." (Appellant's Br. at 25.) Based on this alleged violation of an independent duty, Studer contends that her IWPCA claim was not preempted by ERISA.

We disagree. In making this argument, Studer urges us to ignore the VEBA plan entirely and instead to consider only the PDL policy, which she contends is "the source of PDL" and "is not an ERISA plan." (*Id.* at 23.) She then argues that her IWPCA claim, which she alleges could be adjudicated without any reference to the ERISA benefit plan, was entirely independent of ERISA and thus was not preempted by it.

If we were to follow Studer down this path, we might conclude that she is correct. Unfortunately for her, however, we cannot ignore the VEBA plan here. Under the IWPCA, a separated employee is entitled to payment only for "vacation time earned *in accordance with [the employer's] contract of employment or employment policy.*" 820 ILCS 115/5 (emphasis added). At least as applied to hospital employees like Studer who didn't waive participation in the VEBA plan, the PDL policy explicitly conditioned the accrual of PDL and its availability posttermination on the terms of that VEBA plan. And as discussed above, the VEBA plan was an ERISA benefit plan. So to adjudicate Studer's IWPCA claim, a court would necessarily have to interpret the terms of that ERISA benefit plan.

Put differently, because Studer was a participant in the hospital's VEBA plan, the hospital would be liable under the IWPCA only if it failed to pay Studer directly for the PDL time she was due *under the terms of the VEBA plan*. This means that Studer's IWPCA claim was not "entirely independent of" ERISA; rather, an interpretation of the ERISA plan "form[ed] an essential part" of her IWPCA claim. *Davila*, 542 U.S. at 213. Thus, despite Studer's arguments to the contrary, *Davila*'s second step has also been met. *Id.*; *see also Rice v. Panchal*, 65 F.3d 637, 644 (7th Cir. 1995) ("[C]omplete preemption is required where a state law claim cannot be resolved without an interpretation of the contract governed by federal law.").

## II. CONCLUSION

Because Studer could have brought her claim under ERISA and because her claim did not implicate a legal duty independent of ERISA, her claim was completely preempted. Accordingly, we AFFIRM the district court's denial of Studer's

motion to remand, the grant of the hospital's motion for summary judgment, and the denial of Studer's motion to alter or amend the judgment.