The NORTHERN COLORADO WATER CONSERVANCY DISTRICT AND ITS MUNICIPAL SUBDISTRICT; and the City and County of Denver, acting by and through its Board of Water Commissioners, Plaintiffs,

v.

The BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF GRAND; the Land Use Commission of the State of Colorado; and the Northwest Colorado Council of Governments, Defendants.

BRECKENRIDGE SANITATION DISTRICT; Snowmass Water and Sanitation District; Aspen Metropolitan Sanitation District; Aspen Sanitation District; and Grand Lake Water and Sanitation District, Plaintiffs,

v.

Richard D. LAMM, Governor of Colorado; and the Northwest Colorado Council of Governments, Defendants.

Civ. A. Nos. 79–K–1767, 79–K–1768.

United States District Court,
D. Colorado.

Jan. 15, 1980.

John M. Sayre, Gregory J. Hobbs, Jr., Davis, Graham & Stubbs, Denver, Colo., for Northern Colorado Water Conservancy District and the Municipal Subdistrict.

Wayne D. Williams, Henry C. Teigen, Denver, Colo., for City and County of Denver.

Gerald E. Dahl, Gen. Counsel, Frisco, Colo., Alan E. Schwartz, Richard M. Foster, Jr., Musick, Williamson, Schwartz, Leavenworth & Cope, P. C., Boulder, Colo., for Northwest Colorado Council of Governments and Grand County Board of Commissioners.

Thomas Fenton Smith, Marshall D. Brodsky, Asst. Attys. Gen., Denver, Colo., for Land Use Commission of the State of Colorado and Richard D. Lamm, Governor of Colorado.

Eugene F. Megyesy, Jr., Saunders, Snyder, Ross & Dickson, P. C., Denver, Colo., for Snowmass Water & Sanitation District.

Jerry W. Raisch, Vranesh & Raisch, P. C., Boulder, Colo., for Breckenridge Sanitation District; Aspen Metro Sanitation District; Aspen Sanitation District; Grand Lake Water & Sanitation District.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge..

These actions have been removed pursuant to 28 U.S.C. § 1442(a)(1) from the District Court in and for the City and County of Denver, Civil Actions No. 79–CV–8173 (here No. 79–K–1767) and 79–CV–8304 (here No. 79–K–1768). The petitioners for removal are the Board of County Commissioners of the County of Grand ("Grand County"), and the Northwest Colorado Council of Governments ("Northwest COG"). The plaintiffs in each of the above-entitled actions have moved for their remand to state court. In addition, the plaintiffs have been joined in No. 79–K–1767 by the Colorado Land Use Commission and in No. 79–K–1768 by the governor of Colorado. The motions for remand are now before the court.

These actions involve important questions of state law concerning the substantive powers of counties and regional councils of government in Colorado and whether these bodies and the Colorado Land Use Commission have complied with the state administrative procedure act. The Denver Water Board and other plaintiffs challenge the promulgation of regulations by the County Commissioners of Grand County which allegedly interfere with their development of water rights. They allege that Grand County doesn't have the substantive power to do so and has not complied with correct rule-making procedures, and further, they allege that any such regulations would nonetheless conflict with Colorado law that protects plaintiffs' development rights and with certain provisions of the state constitution.

Northwest COG is a regional political entity organized pursuant to Colorado law. Its primary purpose is to facilitate coordinated planning for perceived area problems.

Northwest COG has recently been involved as a Section 208 areawide waste treatment management planning agency under the federal Clean Water Act, 33 U.S.C. §§ 1251 et seq., specifically § 1288. None of the parties dispute that Northwest COG has been involved in this planning. Its proposed Section 208 plan has not been approved by the EPA, because of the continuing state litigation that is involved here. (See Exhibit 3 to the Complaint in No. 79–K–1767.) Plaintiffs allege that Northwest COG, in its planning and communication with federal agencies, has employed and based planning decisions on the challenged Grand County regulations. Plaintiffs specifically allege that Grand County and Northwest COG "have entered into, or intend to enter into, agreements with the United States Forest Service which would require compliance by Denver and the Northern Colorado Water Conservancy District and its Municipal Subdistrict with Grand County regulations . . . ." (Complaint in No. 79–K–1767, at ¶ 7.)

The allegation against defendant Colorado Land Use Commission is that it has not complied with the state administrative procedure act. This defendant has not joined the petition for removal.

The petitions for removal are not based on the general removal statute at 28 U.S.C. § 1441, but on 28 U.S.C. § 1442(a)(1). This section provides:

A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

Petitioners' theory of removal is that they are acting as agents of the United States or under the direction of an officer of the United States, the Administrator of the Environmental Protection Agency, and that the complained of acts were performed "under color of such office." The theory, however, is not supported by the facts.

The purpose of 28 U.S.C. § 1442(a)(1) is to protect federal officers from state interference with the exercise of federal authority. The requirements for removal under § 1442(a)(1) are that petitioner be a federal officer or a person acting under the direction of such an officer, and that the acts complained of be done under color of such office. See Willingham v. Morgan, 395 U.S. 402, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969); Maryland v. Soper (No. 1), 270 U.S. 9, 46 S.Ct. 185, 70 L.Ed. 449 (1926); and O'Bryan v. Chandler, 496 F.2d 403 (10th Cir. 1974). These requirements are jurisdictional and must be determined on a motion to remand.

The first of these requirements is whether petitioners are clothed with federal authority within the meaning of § 1442(a)(1). As another court has said, "[w]hat [this requirement] comes down to is that the court in each case must ascertain to what extent defendants act under federal direction and to what extent defendants act as independent agents." Gurda Farms, Inc. v. Monroe County Legal Assistance Corp., 358 F.Supp. 841, 844 (S.D.N.Y.1973).

The federal Clean Water Act, 33 U.S.C. §§ 1251 et seq., establishes a program of intergovernmental cooperation toward the reduction and elimination of water pollution in this country. To further this goal, the act provides at 33 U.S.C. § 1288 for the designation of areawide waste treatment management planning agencies by the governor of each state, or, if the governor does not do so, by agreement of the chief elected officials in an agreed upon area. In either case, the designation is subject to the approval of the Administrator of the United States Environmental Protection Agency, according to criteria set forth at 33 U.S.C. § 1288(b). These areawide agencies are organized to plan wastewater treatment and pollution control programs in the designat-

ed area. The plans are submitted to the governor for his review and consideration, and then certified to the Administrator for approval. The overall scheme includes the usual benefits of federal grants and other assistance.

■■ Petitioners, under this scheme, are not acting as federal entities or as agents of the Environmental Protection Agency. Any acts undertaken or powers exercised can only have been undertaken or exercised pursuant to state, not federal law. Petitioners owe their existence and whatever powers they possess to state law. In Colorado, as in other states, counties are political subdivisions of the state and have only those powers which are granted to them. *See, e. g., County Commissioners v. Love*, 172 Colo. 121, 125, 470 P.2d 861 (1970) (*en banc*); *Farnik v. Board of County Commissioners*, 139 Colo. 481, 491, 341 P.2d 467 (1959) (*en banc*). The powers of county governments in Colorado are set out at C.R.S., §§ 30–11–101 *et seq.* (1977). Similarly, the Northwest Colorado Council of Governments has its origins in C.R.S., §§ 30–28–105 *et seq.* (1977), which likewise set out various powers and authorities of such planning bodies.

■ While the federal clean water program provides for the use of various agencies of state and local government in pursuing environmental goals, it does not constitute a grant of substantive powers to political subdivisions of another sovereign. The Clean Water Act instead provides for designation of planning agencies and sets forth criteria for approval of any resulting plans. If the Administrator of the Environmental Protection Agency finds that a plan submitted for his approval does not meet these criteria—which include the establishment of a regulatory program, *see* 33 U.S.C. § 1288(b)(2)(C)—then the plan may be rejected.[1] But whether a state body has some particular power that may be necessary in order for it to be able to submit an approvable plan is a question of state law that involves important concerns based on feder-

alism concerning the way in which a state chooses to organize its government. As far as Northwest COG is concerned, the acts complained of are not the Section 208 planning as such, but the use of Grand County regulations that plaintiffs allege have no valid basis in *state* law. The Clean Water Act does not authorize petitioners to do what they cannot do under state law.

In addition, the Clean Water Act expressly states at 33 U.S.C. § 1251(b):

> It is the policy of the Congress to recognize, preserve, and protect the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution, to plan the development and use (including restoration, preservation, and enhancement) of land and water resources, and to consult with the Administrator in the exercise of his authority under this chapter. It is the policy of Congress that the States manage the construction grant program under this chapter and implement the permit programs under sections 1342 and 1344 of this title. It is further the policy of the Congress to support and aid research relating to the prevention, reduction, and elimination of pollution, and to provide Federal technical services and financial aid to State and interstate agencies and municipalities in connection with the prevention, reduction, and elimination of pollution.

*See generally Shell Oil Co. v. Train*, 585 F.2d 408 (9th Cir. 1978); *State of Washington v. United States Environmental Protection Agency*, 573 F.2d 583 (9th Cir. 1978); and *Mianus River Preservation Committee v. Administrator, Environmental Protection Agency*, 541 F.2d 899 (2d Cir. 1976). While these decisions do not involve issues of removal jurisdiction and concern other provisions of the federal water pollution law, they do indicate that the law does not, as a general rule, create the sort of "agency" relationship that petitioners suggest. To borrow language from the court of appeals in *Mianus River Preservation Committee*,

---

1. Northwest COG's proposed Section 208 plan has not yet been approved by the Administra-

tor. *See* Exhibit 3 to the Complaint in No. 79–K–1767.

[t]o conclude that a State's issuance of [a Section 208 plan] is 'Administrator's action' subject to direct review by this Court, would in some cases result in our being required to review issues involving only a State agency's application and interpretation of purely State law. We are loath, without more convincing and specific authority than exists here, to read into the [Federal Water Pollution Control Act] a Congressional desire to reach such a result, a result which would raise problems going directly to the heart of our federal system.

541 F.2d at 899.

Cases cited by petitioners, while helpful to the court, are distinguishable on important grounds. In *State of Utah v. IWY Coordinating Committee*, 454 F.Supp. 518 (D.Utah 1978), the important question whether the petitioners there were federal officers had been conceded. The issue was instead whether the acts complained of were under color of their office. In *Gurda Farms, Inc. v. Monroe County Legal Assistance Corp.*, 358 F.Supp. 841, the court's analysis of the federal nexus showed that petitioners were employees of a federal program under the direct supervision of federal officials, while in *First National Bank of Bellevue v. Bank of Bellevue*, 341 F.Supp. 960 (D.Neb.1972), a bank had been authorized by the Secretary of the Treasury to establish banks on United States military bases. Finally, in *Teague v. Grand River Dam Authority*, 279 F.Supp. 703 (N.D.Okl. 1968), the petitioner for removal operated a dam under a 50-year license from the Federal Power Commission. The relevant statute expressly put control of the dam's operation in the hands of the Secretary of [Defense] and the power commission.

The situation here might be different if petitioners were being sued in state court because of their enforcement of federal environmental laws. Such is not this case. The Clean Water Act provides for designation of planning agencies, but the planning process and the powers that are exercised therein are matters of state law. The only option of the federal government is not to approve plans or planning processes that do not conform to relevant federal criteria. Accordingly, it is

ORDERED that the motions to remand in Civil Actions No. 79–K–1767 and 79–K–1768 be and hereby are granted, each party to bear his or its own costs.