John Corbett O'Meara, United States District Judge
Before the court is Plaintiffs' motion for remand, which has been fully briefed. Pursuant to L.R. 7.1, the court did not hear oral argument, as this matter has been thoroughly and sufficiently presented in the briefs.
BACKGROUND FACTS
This case arises out of the water crisis in Flint, Michigan, in which the city's drinking water became tainted with lead and other contaminants after the city switched its drinking water source to the Flint River to reduce costs. The complaint was filed as a class action in state court by named Plaintiffs Melissa Mays, Michael Adam Mays, Jacqueline Pemberton, Keith John Pemberton, Elnora Carthan, and Rhonda Kelso against the City of Flint, the Receivership Transition Advisory Board, Natasha Henderson, Eden Victoria Wells, M.D., *921 Stephen Busch, Liane Shekter-Smith, Adam Rosenthal, Patrick Cook, Michael Prysby, Bradley Wurfel, Howard Croft, Michael Glasgow, and Daugherty Johnson. The individual defendants are current or former employees of the City of Flint or the State of Michigan.
Plaintiffs, who intend to represent a class of thousands of Flint water users, have set forth state claims of gross negligence, fraud, assault and battery, and intentional infliction of emotional distress. Plaintiffs contend that Defendants were grossly negligent in approving a switch in Flint's drinking water source to the Flint River and in monitoring the lead levels in the drinking water supply after that change. See Compl. at ¶ 1. Plaintiff further allege that Defendants, "in bad faith, assured Flint water users that the Flint River water was safe to consume when they were on actual notice and had reason to believe that the water was in fact unfit for human consumption." Compl. at ¶ 2.
Defendants Cook, Shekter-Smith, Busch, and Wurfel, who are current or former employees of the Michigan Department of Environmental Quality ("MDEQ"), filed a notice of removal of this action from Genesee County Circuit Court.[1] The MDEQ Defendants contend removal is proper under 28 U.S.C. § 1442, the federal officer removal statute, and under 28 U.S.C. § 1441, based upon a substantial federal question. Plaintiffs have filed a motion to remand, arguing that this court lacks jurisdiction over their complaint.
Plaintiffs' claims against the individual MDEQ defendants are relevant to the motion to remand. With respect to Stephen Busch, the District Supervisor assigned to the Lansing District Office of the MDEQ, Plaintiffs allege that he acted in a grossly negligent manner when he "knowingly created, increased and prolonged the hazards by approving the decision to switch the water source when he was on notice of the dangers associated with same." Compl. at ¶ 20. Plaintiffs further allege that Busch "falsely reported that anti-corrosive agents had been used to treat the highly corrosive Flint River water and thereby provided assurances to Plaintiffs and the public that the Flint River water was safe when he was on actual notice, and/or had reason to believe, that these assurances were false and/or baseless."Id. at ¶ 21.
Defendant Patrick Cook was the Water Treatment Specialist assigned to the Lansing Community Drinking Water Unit of the MDEQ. Plaintiffs allege that he was grossly negligent in approving the decision to switch Flint's drinking water source and in failing "to properly monitor and test the Flint River water; he falsely reported to the EPA that the Flint River water was treated with anti-corrosive chemicals; and he [falsely] provided assurances to Plaintiffs that the Flint River was safe." Compl. at ¶¶ 22, 23.
Defendant Michael Prysby was the Engineer assigned to District 11 (Genesee County) of the MDEQ. Plaintiffs allege Prysby was grossly negligent in approving the decision to switch the water source and in failing to properly monitor and test the Flint River water. Plaintiffs also allege that Prysby provided false assurances to the public that the Flint River water was safe. Compl. at ¶ 24.
Defendant Bradley Wurfel was the Director of Communication for the MDEQ. Plaintiffs allege that Wurfel was "responsible *922 for the deliberate, misleading and inaccurate communications that increased and prolonged the hazards, threats, and dangers that arose by replacing safe drinking water with a highly toxic alternative." Compl. at ¶ 26.
Defendant Liane Shekter-Smith was the Chief of the Office of Drinking Water and Municipal Assistance for the MDEQ. Plaintiffs allege that Shekter-Smith was "grossly negligent in that she knowingly approved of, and thereby participated in, the decisions that created, increased and prolonged the hazards, threats and dangers that arose by replacing safe drinking water with a highly toxic alternative. She further provided false assurances to Plaintiffs and the entire Plaintiff class that the Flint River water was safe." Compl. at ¶ 27.
Defendant Adam Rosenthal was a Water Quality Analyst assigned to the Lansing District Office of the MDEQ. Plaintiffs allege he was grossly negligent in participating in decisions that "created increased and prolonged the hazards" that arose from the change in water source. Plaintiffs further allege that Rosenthal provided false assurances that the Flint River water was safe. Compl. at ¶ 29.
LAW AND ANALYSIS
In their notice of removal, the MDEQ Defendants contend that they are entitled to remove under the federal officer statute because they were acting as agents of the U.S. Environmental Protection Agency in enforcing the Safe Drinking Water Act ("SDWA"). Defendants further argue that Plaintiffs' complaint necessarily raises a federal issue, establishing jurisdiction under the substantial federal question doctrine.
"Federal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute." Gunn v. Minton, 568 U.S. 251, 133 S.Ct. 1059, 1064, 185 L.Ed.2d 72 (2013) (citation omitted). The party seeking removal bears the burden of demonstrating that the court has jurisdiction. See Eastman v. Marine Mechanical Corp., 438 F.3d 544, 549 (6th Cir. 2005).
I. Federal Officer Removal
The federal officer removal statute permits removal of actions brought against
(1) The United States or any agency thereof or any officer (or any person acting under that officer ) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office ....
28 U.S.C. § 1442(a)(1) (emphasis added). From its origin in 1815, the purpose of this statute has been to protect the operations of the federal government from state interference. See Mesa v. California, 489 U.S. 121, 125-26, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989) ; Watson v. Philip Morris Co., Inc., 551 U.S. 142, 150-51, 127 S.Ct. 2301, 168 L.Ed.2d 42 (2007). For example, in the 1830s South Carolina passed a Nullification Act declaring federal tariff laws unconstitutional and authorizing prosecution of federal agents who collected the tariffs. See Watson, 551 U.S. at 148, 127 S.Ct. 2301. The removal statute allowed federal officers to defend themselves "where the authority of [federal] law was recognised." Id. (quoting Sen. Daniel Webster, 9 Cong. Deb. 461 (1833) ). As the Supreme Court has explained, the federal government
can act only through its officers and agents, and they must act within the States. If, when thus acting, and within the scope of their authority, those officers can be arrested and brought to trial in a State court, for an alleged offense against the law of the State, yet warranted by the Federal authority they *923 possess, and if the general government is powerless to interfere at once for their protection - if their protection must be left to the action of the State court - the operations of the general government may at any time be arrested at the will of one of its members.
Mesa, 489 U.S. at 126, 109 S.Ct. 959 (citations omitted).
The federal officer removal statute also applies to those private persons who act "as an assistant to a federal official in helping that official to enforce federal law." Watson, 551 U.S. at 151, 127 S.Ct. 2301. In such cases, the removing party must establish that (1) he "acted under a federal official"; (2) he performed the action for which he is being sued "under color of federal office"; and (3) he raised a colorable federal defense. Bennett v. MIS Corp., 607 F.3d 1076, 1086-89 (6th Cir. 2010).
A private person "acting under" a federal official "must involve an effort to assist , or help carry out , the duties or tasks of the federal superior." Watson, 551 U.S. at 152, 127 S.Ct. 2301 (emphasis in original). To show that the actions in dispute were performed "under color of federal office," Defendants "must show a nexus, a causal connection between the charged conduct and the asserted official authority." Bennett, 607 F.3d at 1088 (citations omitted). "In other words, the removing party must show that it is being sued because of the acts it performed at the direction of the federal officer." Id. See also In re MTBE Prods. Liability Litig., 488 F.3d 112, 124-25 (2d Cir. 2007) ("Critical under the statute is to what extent defendants acted under federal direction at the time they were engaged in the conduct now being sued upon."); Mesa, 489 U.S. at 131-32, 109 S.Ct. 959 (noting that the defendant "must by direct averment exclude the possibility that [plaintiff's suit] was based on acts or conduct of his not justified by his federal duty").
Defendants do not allege that they are being sued for actions taken at the specific direction of EPA officials. Rather, they suggest that the extensive interaction between the MDEQ and the EPA after Flint switched its water source shows that they were "acting under" the EPA. Although it appears that the EPA provided oversight and guidance to the MDEQ, this does not establish that MDEQ officials were acting pursuant to federal direction , as required for federal officer removal. See Watson, 551 U.S. at 153. See also Holdren v. Buffalo Pumps, Inc., 614 F.Supp.2d 129, 149 (D. Mass. 2009) ("[A] defendant must show that it acted at the federal government's command."); Anderson v. Hackett, 646 F.Supp.2d 1041, 1054 (S.D. Ill. 2009) ("[A] removing defendant must show that at all times it was acting under express orders, control and directions of federal officers, and that its involvement in conduct giving rise to state-court liability was strictly and solely at federal behest."); New Jersey Dept. of Environ. Protection v. Exxon Mobil Corp., 381 F.Supp.2d 398, 404 (D. N.J. 2005) ("[T]his control requirement can be satisfied by strong government intervention and the threat that a defendant will be sued in state court based upon actions taken pursuant to federal direction."); Freiberg v. Swinerton & Walberg Prop. Servs., Inc., 245 F.Supp.2d 1144, 1155 (D. Colo. 2002) ("What they must establish for purpose of the § 1442(a)(1) [analysis] is that they government authority under which they worked required them to act as they did.").
The EPA issued an Emergency Administrative Order on January 21, 2016, addressing the Flint water crisis. In that order, the EPA found that the "City, MDEQ, and the State have failed to take adequate measures to protect public *924 health" and "there continue to be delays in responding to critical EPA recommendations and in implementing the actions necessary to reduce and minimize the presence of lead and other contaminants in the water supply both now and in the near future." Defs.' Notice of Removal, Ex. J at ¶ 34. The EPA order indicates that the MDEQ was not acting as an agent of the EPA, but was viewed by the EPA as "an instrumentality of the State." Id. at ¶ 41. This distinguishes this case from Clio Convalescent Center v. Michigan Dept. of Consumer and Indus. Servs., 66 F.Supp.2d 875, 876-77 (E.D. Mich. 1999), in which the state agency had entered into a contract with the Secretary of Health and Human Services to act on behalf the Secretary. In Clio, removal was proper because the state agency was acting as the Secretary's agent pursuant to a contract. There is no allegation of a similar relationship here.
Moreover, MDEQ's authority over public water supplies is derived from state law - the Michigan Safe Drinking Water Act. See M.C.L. §§ 325.1002, 325.1003 (establishing that the MDEQ has "power and control over public water supplies and suppliers of water"). Although the SDWA delegates primary enforcement responsibility for public water systems to the states, it does so only when states have adopted their own sufficiently stringent drinking water regulations. See 42 U.S.C. §§ 300g-2, 300g-3. Defendants have not cited authority for the proposition that the SDWA creates an agency relationship between state environmental agencies and the EPA. Cf. Northern Colorado Water Conservancy District v. Board of Cty. Com'rs of the Cty. of Grand, 482 F.Supp. 1115, (D. Colo. 1980) (county commissioners and regional political entity not agents of the EPA under Clean Water Act).
The MDEQ Defendants further argue that they acted in compliance with the SDWA and its regulations, which they suggest did not require immediate optimized corrosion control after the switch to the Flint River water. See Defs.' Br. at 34-35 & n.8. In other words, MDEQ contends that its approval and monitoring of Flint's drinking water source was in accordance with federal standards. The fact that MDEQ officials may have complied with federal law, however, does not transform them into federal officers. Nor does MDEQ's alleged compliance with or enforcement of federal law form the basis for Plaintiffs' claims. Rather, Plaintiffs claim that Defendants negligently approved the switch to Flint River water, failed to properly monitor and test the drinking water supply, and falsely assured the public the water was safe. Defendants have not identified how the SDWA, federal regulations, or federal officials required them to take the course of action they did. At most, Defendants suggest their actions were permitted by federal law, which is insufficient under the precedent cited above.
The history, precedent, and language of the statute do not support removal in this case. Because Defendants have not demonstrated that they "acted under a federal official" or performed the actions for which they are being sued "under color of federal office," removal is not proper under 28 U.S.C. § 1442(a)(1).
II. Substantial Federal Question
Defendants also contend that removal is proper because Plaintiffs' complaint raises a substantial federal question. District courts have original jurisdiction over "actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. See also 28 U.S.C. § 1441(b). A case can "arise under" federal law in two ways: when federal law creates the cause of action asserted, or when a state-law claim necessarily raises a substantial federal issue.
*925 Gunn v. Minton, 568 U.S. 251, 133 S.Ct. 1059, 1064-65, 185 L.Ed.2d 72 (2013). Defendants allege jurisdiction under the latter method, which the Supreme Court has referred to as a "special and small category" of cases. Id.
In determining whether this case fits into that "slim" category, the court considers whether the "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities?" Gunn, 133 S.Ct. at 1065 (quoting Grable & Sons Metal Prods., Inc. v. Darue Engin. & Mfg., 545 U.S. 308, 314, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005) ).
That is, federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. Where all four of these requirements are met, we held, jurisdiction is proper because there is a "serious federal interest in claiming the advantages thought to be inherent in a federal forum," when can be vindicated without disrupting Congress's intended division of labor between state and federal courts.
Id. (citing Grable, 545 U.S. at 313-14, 125 S.Ct. 2363 ).
Plaintiffs have alleged claims of gross negligence, fraud, assault and battery, and intentional infliction of emotional distress. As this court concluded in a similar case, these "garden-variety" state tort claims do not raise a substantial federal issue. See Bell v. Lockwood, Andrews & Newnam, No. 16-10825, 2016 WL 9776140 (E.D. Mich. Apr. 13, 2016) (Docket No. 17). The court's analysis in Bell controls here.
Defendants contend that a federal issue is raised because the SDWA and its regulations provide the source of their duty to Plaintiffs. Even if Plaintiffs sought to demonstrate that Defendants were negligent because they failed to comply with the SDWA or its regulations, this does not raise a substantial federal issue. See Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 813-817, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) ("[T]he presence of the federal issue as an element of the state tort is not the kind of adjudication for which jurisdiction would serve congressional purposes and the federal system."); Hampton v. R.J. Corman R.R. Switching Co. LLC, 683 F.3d 708, 712 (6th Cir. 2012) (no federal jurisdiction when plaintiff alleged defendant violated federal statute and regulations and was thus presumptively negligent under state law).
In sum, Plaintiffs have alleged claims under state law against state officials. Defendants have not established that they are entitled to remove based upon either a substantial federal question or the federal officer statute.
III. Attorney Fees
Plaintiff seeks attorney's fees pursuant to 28 U.S.C. § 1447(c), which provides that an "order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Id."Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005). "A defendant lacks an objectively reasonable basis for removal when well-settled case law makes it clear that federal courts lack jurisdiction to hear the case." A Forever Recovery, Inc. v. Twp. of Pennfield, 606 Fed.Appx. 279, 281 (6th Cir. 2015).
*926 Although the court finds that Defendants' arguments are not meritorious, it does not find that Defendants lacked an objectively reasonable basis for removal under the federal officer statute. Cf. Boler, supra (awarding attorney's fees because defendants lacked an objectively reasonable basis to remove on substantial federal question theory). Accordingly, the court will not award attorney's fees.
ORDER
IT IS HEREBY ORDERED that Plaintiffs' motion to remand is GRANTED and this matter is REMANDED to Genesee County Circuit Court.

All Defendants have not joined in the MDEQ Defendants' notice of removal. Although the "rule of unanimity" generally requires all defendants to join in a notice of removal, this is not required under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). See, e.g., Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1253 (9th Cir. 2006).